RECEIVED
USDC CLERK, CHARLESTON, SC

2006 OCT 16  P 2:31

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kent Adams, #248499, | C. A. No. 2:06-1571-GRA-RSC |
| Petitioner, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| State of South Carolina; Stan Burtt, Warden of Lieber Correctional Institution, and Henry McMaster, Attorney General of South Carolina, | |
| Respondents. | |

This habeas corpus petition filed May 22, 2006, under 28 U.S.C. § 2254 by a state prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the respondents' summary judgment motion filed on August 14, 2006. 28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The petitioner, Kent Adams, is presently confined in the Lieber Correctional Institution of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Edgefield County Clerk of Court. The Edgefield County Court of General Sessions indicted Petitioner at the March 1998 term of court for kidnapping (1998-GS-19-001), assault and battery with intent to kill (ABIK) (1998-GS-19-002), and armed robbery (1998-GS-19-003). App. pp. 57-58; 62-63; 67-68. Thomas Russo, Esquire, represented him on these charges. On March 18, 1998, Petitioner pled guilty as charged before the Honorable James

Johnson. Judge Johnson sentenced him to thirty (30) years imprisonment for kidnapping, twenty (20) years imprisonment for ABIK and thirty (30) years imprisonment for armed robbery. App. pp. 61, 66, 71. Petitioner did not appeal his conviction or sentences.

Petitioner filed a pro se Post-Conviction Relief (PCR) Application (02-CP-19-042) on March 4, 2002, in which he alleged the following grounds for relief:

> 1. Ineffective assistance of counsel.
>
> 2. Prosecution coercion (sic) petitioner with life sentence.
>
> 3. Petitioner has history of mental disorder/counsel didn't request an evaluation. (sic).

Supp. App. pp. 1-5.

The State filed its Return and Motion to Dismiss on May 13, 2002. The State argued that thc Application should be summarily dismissed because it was barred by the statute of limitations governing PCR applications, S.C. Code Ann. § 17-27-45(A) (Supp. 2002). Supp. App. pp. 6-8.

The Honorable James R. Barber held an evidentiary hearing into the matter on June 7, 2002, at the Lexington County Courthouse. Petitioner was present at the hearing and testified represented by Michael W. Chesser, Esquire. Assistant Attorney General B. Allen Dullard represented the State. Petitioner

testified on his own behalf. Petitioner was the only witness at the hearing. Supp. App. pp. 9-26.

On August 5, 2002, Judge Barber signed an Order of Dismissal, in which he denied relief and dismissed the Application because it was not timely filed as required by the statute of limitations. Supp. App. pp. 27-30. Petitioner did not appeal from this Order.

Petitioner filed a second pro se PCR Application (03-CP-19-010) on January 10, 2003, in which he alleged the following grounds for relief:

>   1.  Ineffective assistance of counsel.
>
>   2.  Prosecution coercion (sic) petitioner with life sentence.
>
>   3.  Petitioner has history of mental disorder/counsel didn't request an evaluation. (sic).

2003 PCR Application at p. 2. The State filed its Return and Motion to Dismiss on October 20, 2003. The State argued that the 2003 Application should be summarily dismissed because it was successive to the Application filed in 02-CP-19-042 and because it was untimely under § 17-27-45(A). App. pp. 4-5B.

The Honorable William P. Keesley held a hearing into the matter on June 15, 2004, at the Lexington County Courthouse at which Petitioner was present represented by Randall Williams, Esquire. Assistant Attorney General Lakesha W. Jeffries represented the State. There was no testimony taken at this

3

hearing; the court entertained the arguments of counsel and Petitioner as to whether he should grant the State's motion, as well as whether Petitioner knowingly and intelligently waived his right to appeal the denial of his first PCR application. App. pp. 6-26.

On June 15, 2004, Judge Keesley entered an order in which he denied relief and dismissed the Application because it was successive under S.C. Code Ann. § 17-27-90(1955) and Aice v. State, 409 S.E.2d 392 (S.C. 1991), and because it was time-barred by § 17-27-45(A). App. pp. 27-30. A timely notice of appeal was served and filed.

Assistant Appellate Defender Robert M. Pachak represented Petitioner and on December 7, 2004, a Petition for Writ of Certiorari from the denial of PCR was filed. The only question presented was:

> Whether petitioner knowingly and intelligently waived his right to appeal the denial of his first PCR application?

Petition for Writ of Certiorari at p. 2. The State filed a Return to Petition for Writ of Certiorari on April 22, 2005.

The South Carolina Supreme Court filed a summary Order on April 7, 2006, in which it denied certiorari. The Remittitur was sent to the Edgefield County Clerk of Court on April 25, 2006.

The following documents have been made part of the record here:

4

1.  The Appendix to the December 7, 2004, Petition for Writ of Certiorari (1 vol.)(including the PCR Application (03-CP-19-010) (partial); the Return and Motion to Dismiss; the PCR hearing transcript; the Order of Dismissal; the Edgefield County Clerk of Court's records; and Petitioner's SCDC records);

2.  The Supplemental Appendix to the December 7, 004, Petition for Writ of Certiorari (1 vol.) (including the PCR Application (02-CP-19-042); the Return and Motion to Dismiss; the PCR hearing transcript; and the Order of Dismissal);

3.  Petitioner's mental health records from Gilliam Psychiatric Hospital;

4.  The PCR Application (03-CP-19-010);

5.  The July 1, 2004, Notice of Appeal;

6.  The December 7, 2004, Petition for Writ of Certiorari;

7.  The April 22, 2005, Return to Petition for Writ of Certiorari;

8.  The April 7, 2006, Order of the South Carolina Court of Appeals; and

9.  The April 25, 2006, Remittitur.

### HABEAS ALLEGATIONS

Petitioner raised the following allegations in the instant Petition for Writ of Habeas Corpus under 28 U.S.C. §2254:

> **GROUND ONE:** Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea; conviction obtained by use of coerced confession; conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant; denial of effective assistance of counsel; denial of right of appeal.

> **SUPPORTING FACTS:** I did not know what I was doing, and the prosecution did not give me all of the evidence, and the judge did not know of my mental health - patients who must take these drugs together require close medical observation. My limitations run out when I was in Mental G.P.H. at R.E. So I was still on psychosis medicine I could not do my P.C.R. for a long time. till I got Better. (sic).

The petitioner was provided a copy of the respondents' summary judgment motion on August 14, 2006, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The petitioner responded to the motion on October 11, 2006. Hence it appears consideration of the motion is appropriate.

## DISCUSSION

A review of the record and relevant case law indicates that the respondents' contention that this petition is untimely is dispositive of the matter and the petition should be dismissed on that basis.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amendments to Title 28 provide for a one-year period of limitation on the filing of a federal habeas corpus petition. See 28 U.S.C. § 2244(d). Subsection (d)(1)(A) of section 2244 provides that the limitations period shall run from the date when the judgment of conviction became final at the conclusion of

6

direct review. Id. Subsection (d)(2) of section 2244 provides that the limitations period is tolled while state post-conviction or collateral attack actions are pending. Id.

Petitioner's conviction was finalized on March 30, 1998, by the expiration of the ten (10) day period allowed to seek a direct appeal from his March 18, 1998, conviction. Rule 203(b)(2), SCACR ("After a plea or trial resulting in conviction ..., a notice of appeal shall be served on all respondents within ten (10) days after the sentence is imposed"). Petitioner then had until March 30, 1999, to file his federal habeas petition. He did not file within the one year limitations period, indeed, he waited over eight (8) years until May 19, 2006[1], to file the instant petition.

Nor did Petitioner file a PCR action during the one year period following his conviction. His first PCR was filed on March 4, 2002, and his second PCR was filed on January 10, 2003. Additionally both PCRs were dismissed as untimely under South Carolina law, which rendered them "not properly filed" within the tolling provision of the AEDPA. See, Pace v. DiGuglielmo, 544 U.S. 408 (2005).

Therefore, this matter should be dismissed as untimely unless the running of the statute should be equitably tolled

---

[1] Petitioner is given the benefit of the delivery date rule of Houston v. Lack, 487 U.S. 266 (1987)

7

because of his treatment for mental conditions and drug abuse.

## EQUITABLE TOLLING

The AEDPA's statute of limitations also is subject to equitable tolling. Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000); see also, Aaron G. McCullough, Note, For Whom the Court Tolls: Equitable Tolling of the AEDPA Statute of Limitations in Capital Habeas Cases, 62 Wash. & Lee L.Rev. 365, 384 (2005) ("Every court to address the issue has determined that the AEDPA's deadline is a statute of limitations subject to equitable tolling."). The Fourth Circuit cautions that equitable tolling is rarely warranted:

> Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Harris, 209 F.3d at 330.

For equitable tolling to apply, a defendant must establish that (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) prevented him from filing on time. Rouse v. Lee, 339 F.3d 238, 247 (4th Cir. 2003) (en banc); Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). See also,

8

Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (equitable tolling is appropriate only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control").

Because the doctrine is discretionary and "turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules" of application. Harris, 209 F.3d at 330 (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)). (internal citations and quotation marks omitted).

In the June 7, 2002, evidentiary hearing held by Judge Barber in 02-CP-19-042, Petitioner sought to explain the delay in filing the Application based upon his placement in the Gilliam Psychiatric Hospital in SCDC, where he was treated for "schizophrenia and paranoia" as he was "coming off from drug abuse on crack." He testified that he went straight from Reception and Evaluation (R & E) to Gilliam and remained there for "about six months, where he was treated with a monthly injection of Haldol for ... depression and everything." He was going "back and forth" from Gilliam to Lieber Correctional Institution; and testified that he had returned to Gilliam on three occasions. Supp. App. pp. 13-15.

While Petitioner's PCR testimony as to the lengths of time that he was treated in Gilliam, as opposed to being in other SCDC

9

facilities, is imprecise, the state presented Judge Barber with Petitioner's actual SCDC records. (see Supp. App. 16-17). These records show that Petitioner was transferred from Kirkland Correctional Institution (KCI) infirmary to Gilliam on May 4, 1998, and was to KCI on September 1, 1998. He was thereafter housed in several institutions before being transferred from Lieber to Gilliam on August 26, 1999. From that point forward, he was housed in Lieber or Evans Correctional Institution (ECI). App. p. 54.

Petitioner, who is originally from Wagner, South Carolina, had attended Freeman Vocational Center, a school for persons with learning disabilities, and stated that he had been classified as retarded. Supp. App. pp. 17-18. Petitioner also stated that he was taken off of Haldol in 2001, and claimed he could not have filed timely because of the effects of his medication. Supp. App. pp. 18-22. At the end of Petitioner's testimony, Judge Barber directed Petitioner's counsel to submit Petitioner's medical records as pertained to his competency and mental health issues and counsel complied. Supp. App. pp. 23-24.

Judge Barber's Order of Dismissal reflects that before denying relief, Judge Barber considered Petitioner's mental health records from Gilliam Psychiatric Hospital and found that the records "do not indicate that he was incompetent during his time there. Therefore, this Court finds no merit to his claim

and grants the Respondent's motion." Supp. App. pp. 28-29.

At the June 15, 2004 hearing before Judge Keesley in the second PCR, Petitioner's counsel asserted that the records submitted in the earlier PCR action were incomplete. App. p. 8. Judge Keesley read through the records submitted by Petitioner, which were then sealed (see App pp. 31-53 ); and he noted that those records did not reflect that Petitioner is mentally retarded. On one test, Petitioner had a full scale I.Q. of 85. Another test at age 14 measured his full scale I.Q. at 78, his performance I.Q. was 92, his verbal I.Q. was 81. Judge Keesley further noted that although the records contained various diagnoses, there were no diagnoses of a major mental illness, only conduct disorders. He further found that Judge Breeden had previously rejected Petitioner's assertion that mental health status prevented a timely filing of the original Application, and he denied relief based on the statute of limitations. He also rejected Petitioner's request for a belated appeal from Judge Breeden's Order because the earlier Order advised Petitioner of his right to appeal. App. pp. 10-14; 27-30.

It does not appear that Petitioner diligently pursued his claims, and he has not demonstrated that the failure to timely file was caused by extraordinary circumstances beyond his control. Nonetheless, even if the court were to assume that Petitioner's mental difficulties were so severe that equitable

11

tolling should apply, that tolling could not continue past when he was clearly able and did file his first PCR on March 4, 2002. Even giving him the benefit of one attempt to obtain redress in the state courts, his habeas limitation period began to run on August 15, 2002, when his time for seeking discretionary review in the South Carolina Supreme Court lapsed. Thereafter he had at most one year until August 15, 2003, to file his petition here and he did not do so. His second PCR did not toll the running of the federal statute because that PCR was dismissed as successive and untimely. As such, that PCR was "not properly filed", and he is not entitled to statutory tolling under § 2244(d)(1). Pace v. DiGuglielmo, at 417. Giving Petitioner every benefit, it appears he simply waited too long to bring this action.

## CONCLUSION

Accordingly, for the aforementioned reason, it is recommended that the respondents' motion for summary judgment be granted and this matter be dismissed as untimely under the AEDPA. 28 U.S.C. § 2244(d).

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
October 16, 2006

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. ***
> We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

13